# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 09-676 MV

SEAN THOMPSON,

      Defendant.

## FINDINGS OF FACT IN SUPPORT OF SENTENCE

**THIS MATTER** came before the Court at Defendant's sentencing hearing on November 10, 2009. The Court heard testimony from defense counsel Russell Aboud, Assistant United States Attorney Andrea Hattan, Defendant Sean Thompson, and Defendant's mother, Rosemary Thompson. After carefully considering this testimony, the Court found that Defendant merited a downward variance pursuant to 18 U.S.C. § 3553(a), concluding that a sentence of 21 months was the appropriate disposition.

## BACKGROUND

On October 16, 2009, the Court set this matter for sentencing on November 10, 2009 and issued a Notice of Hearing [Doc. 35]. Ths notice included an order that sentencing memoranda be filed no later than October 23, 2009. The notice was sent to defense counsel's e-mail address.

Defense counsel did not file a sentencing memorandum prior to the sentencing hearing, but rather brought a hard copy of a three-page, cursory sentencing memorandum to the hearing. The memorandum lacked legal analysis and failed to provide the Court with any information that was not already contained in the PSR.

At the sentencing hearing, defense counsel confirmed that the email address the Court

had for him was accurate.  However, he claimed he never received the Court's notice of the

hearing and only learned of the sentencing on November 4, 2009, when his client informed him

of the hearing date.  Defense counsel further stated that he talked to his local counsel, whom he

identified as Tom Wright, and Mr. Wright had not received notice of the hearing.[1]

Finding Defendant's sentencing memorandum unhelpful in the Court's effort to fashion

an appropriate sentence, the Court made its sentencing determination solely based on the

testimony at the hearing, in accordance with the Sentencing Guidelines and the factors

enumerated in 18 U.S.C. § 3553(a).  The Court issues the following findings in support of the

sentence of 21 months imposed on Defendant.

## FACTUAL FINDINGS

1.      Between October and December of 2008, Defendant made several deliveries of

heroin to a confidential informant ("CI").  In all these instances, Defendant received the heroin

from an individual known as "Lalo" in Juárez, Mexico, or from one of "Lalo's" associates.

2.      Defendant's father, Fred Thompson, knew "Lalo" through his involvement in

trafficking illegal narcotics between Mexico and the United States.  Defendant's father is now

deceased.  After Defendant's father's death, "Lalo" contacted Defendant to express his

condolences, and soon began recruiting Defendant to engage in drug trafficking.  Defendant

initially refused.

3.      In October of 2008, a man whom Defendant did not know approached him at his

---

[1]Tom Wright is not local counsel on this case.  In fact, Mr. Wright is not licensed to
practice law in New Mexico and therefore cannot serve as local counsel on a case in this district.
The Court believes that defense counsel has confused this case with another case.  The Court
further finds it implausible that Defendant somehow received notice of the hearing without his
counsel knowing about it, and informed counsel six days prior to the hearing date.

place of employment and asked him to deliver a package on "Lalo's" behalf.  Defendant refused

to deliver the package because he was suspicious that its contents were illegal.  The man became

angry and contacted "Lalo" on the telephone.  After arguing with "Lalo," the man passed

Defendant the telephone and raised his shirt, exposing a pistol in his waist band.

Simultaneously, "Lalo" told Defendant on the telephone that he would be best off if he delivered

the package.  Defendant perceived this as a threat that he would be harmed if he did not comply

with the man's request to deliver the package.

      4.     Defendant agreed to deliver the package to the CI on October 15, 2008.  Over the

next two months, Defendant received and delivered several other packages of narcotics at

"Lalo's" instruction.  On December 10, 2008, Defendant was arrested for distributing heroin.

The parties have stipulated that he is responsible for 523.08 grams of heroin.

      5.     On April 22, 2009, Defendant pled guilty to distribution of heroin and distribution

of 100 grams and more of heroin [Doc. 32].  The plea agreement stipulates that Defendant shall

receive a seven-level reduction to his base Offense Level: three levels for acceptance of

responsibility pursuant to U.S.S.G. § 3E1.1; two levels for being a minor participant pursuant to

U.S.S.G. § 3B1.2; and two levels pursuant to the "safety valve" provision, U.S.S.G. § 5C1.2.

Defendant's base Offense Level is 28, making his total adjusted Offense Level 21 under the plea

agreement.

      6.     The plea agreement purports to extend a benefit to Defendant in exchange for this

computation of his Offense Level.  Specifically, the agreement states:

> The defendant recognizes that this plea agreement has already conferred a benefit
> upon the defendant and that no downward departure is appropriate.  Consequently,
> in return for the benefit conferred on the defendant by entering into this agreement,
> the defendant agrees not to seek a downward departure or "adjustment" from the

applicable offense level or criminal history category as determined by the Court.

Doc. 32, p. 3, ¶ 6d.[2]

7.      Disregarding the now defunct plea agreement, Defendant's Offense Level is 21 and his Criminal History Category is I, yielding a Guidelines range of 37 to 46 months.  In making its sentencing determination, the Court considered this advisory Guidelines range as well as the remaining facts detailed in this section.

8.      Despite Defendant's reluctance to become involved in illegal drug trafficking, he delivered narcotics for "Lalo" for two months because he became fearful after realizing that various associates of the unidentified man who had threatened him knew where Defendant worked.  He believed that if all these drug traffickers knew where he worked, they probably also knew where he lived.  Defendant felt unable to get himself out of this dangerous situation.

9.      Defendant did not seek out the opportunity to earn money by drug trafficking. Rather, Defendant committed the offense under pressure from drug traffickers with whom his father had worked.  Either Defendant's father or his father's acquaintance, "Lalo," owed money to another drug dealer, and Defendant ended up delivering heroin to work off that debt. Defendant did not profit at all from the narcotics deliveries he made.

10.     After he was apprehended for the present offense, Defendant attempted to cooperate with the government by giving law enforcement agents information concerning "Lalo's" whereabouts.  Defendant met with agents on several occasions.  He pointed out on a

---

[2]The Court disagrees with the contention that Defendant has received a benefit in exchange for his agreement not to seek a downward variance.  The Court notes that the computation of Defendant's Offense Level is the same as the Court would have calculated absent any plea agreement.  Regardless, as Defendant violated his plea agreement by moving for a downward variance at sentencing, the agreement no longer stands.

map exactly where in Mexico "Lalo" and his wife, who was also involved in illegal drug trafficking, could be found.  However, this information was ultimately unhelpful in the government's investigation because "Lalo" never crossed the border into the United States, and consequently, no American law enforcement agency had jurisdiction to arrest him.

11.     When the information that Defendant provided was ultimately unhelpful in apprehending "Lalo," the government offered Defendant the option of continuing to cooperate with law enforcement by posing undercover as a drug dealer.  However, Defendant refused this offer because he did not want to involve himself any deeper in drug trafficking.

12.     When Defendant was growing up his father was involved in drug trafficking, and his mother urged him to stop because such conduct had a bad influence on Defendant and his siblings.  Defendant's father refused, and his parents eventually divorced.

13.     Defendant's mother strove to instill positive values in her children.  From a young age, Defendant worked as a newspaper delivery boy and also had a job selling ice cream. Although the family had very little money, Defendant learned to go out of his way to help others.

14.     When Defendant's parents divorced, Defendant's mother's physical and mental health declined, and he supported her financially and emotionally as she coped with the divorce and her health problems.  When Defendant's father died, Defendant stepped into his father's role and helped his mother to raise his younger sister.  He never became involved in illegal drugs, but he did turn to alcohol after his father's death.

15.     Defendant  has no criminal history, aside from one instance of speeding for which he paid a thirty-dollar fine and court costs.  He has never been incarcerated.

## ANALYSIS

In addition to the advisory Sentencing Guidelines, this Court considers the other factors set forth in 18 U.S.C. § 3553(a).  This section requires a court to consider the nature and circumstances of the offense and the history and characteristics of the defendant.  It also requires a court impose a sentence that complies with the purposes of sentencing, which include retribution, deterrence, incapacitation and rehabilitation.  In satisfying these purposes, the Court has considered each of the factors outlined in Section 3553(a).

At sentencing, the Court found Defendant and his mother to be credible.  After hearing their testimony as it further illustrated Defendant's history and characteristics, as well as the nature and circumstances of the offense, the Court found that the advisory Guidelines range was greater than necessary to satisfy the purposes of sentencing as set forth in Section 3553(a).  The combination of Defendant's childhood circumstances, his honest work ethic and determination, his loyalty in taking care of his mother when her health declined, and his absence of criminal history, all pointed in favor of a downward variance.  Moreover, the circumstances surrounding Defendant's commission of the instant offense demonstrate that coercion and fear were significant factors in Defendant's decision to traffic illegal narcotics.

The Court also considered Defendant's attempt to cooperate in its 3553(a) analysis.  The Second Circuit has held:

> Section 3553(a)(1), in particular, is worded broadly, and it contains no express limitations as to what "history and characteristics of the defendant" are relevant. This sweeping provision presumably includes the history of a defendant's cooperation and characteristics evidenced by cooperation, such as remorse or rehabilitation.

*United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006).

The Court agrees with the Second Circuit's reasoning.  Defendant's efforts to cooperate, albeit ultimately unhelpful in the government's criminal investigation of "Lalo," paint a compelling picture of his history and characteristics.  The fact that Defendant met with law enforcement on several occasions – despite the risk of retaliation by "Lalo" or one of his associates – demonstrates Defendant's genuine desire to assist law enforcement in the apprehension of a high-level drug trafficker.  This cooperation corroborates Defendant's mother's testimony that he is an honest individual who never wished to get involved in his father's drug transactions.

In arriving at its sentencing decision, the Court also considered the remaining factors enumerated in Section 3553(a).  The Court recognizes the very serious nature of the offense because it involved a large quantity of heroin for which Congress has set a mandatory minimum sentence of five years.  It is only because Defendant had no criminal history, did not use violence or hurt anyone during the commission of the instant offense, had a minor role in the offense, and cooperated with law enforcement that he was eligible for a sentence below this statutory minimum.  Defendant's absence of criminal history in combination with the factors discussed above, has convinced the Court that a Guidelines sentence is not necessary to reflect the seriousness of his offense.

Moreover, the Court has not been made aware of any history of violence or any other misconduct on the part of Defendant.  Therefore,  a prolonged period of incarceration will do nothing to protect the public because Defendant poses little risk to the public.  A Guidelines sentence is not necessary to deter Defendant from committing further crimes.

In response to the government's concern, expressed at sentencing, that a below-

Guidelines sentence will create unwarranted sentencing disparities, the Court notes that all criminal defendants are unique.  Noting that it must avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a), the Court finds that the conduct in which Defendant engaged is sufficiently distinct – and far less culpable – than other criminal defendants facing the same charge.  Any disparity resulting from the Court's imposed sentence is warranted by Defendant's lack of criminal intent and the coercive circumstances that drove him to commit the instant offense.

## CONCLUSION

For the foregoing reasons, after giving serious consideration to each of the factors set forth in Section 3553(a), including the advisory Guidelines, the Court reaffirms its decision that the Guideline range in the present case is greater than necessary to satisfy the purposes of sentencing.  **THE COURT THEREFORE FINDS** based on the foregoing that a sentence of 21 months is sufficient, but not greater than necessary, to effectuate the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).  Finally, in light of Defendant's Probation Officer's memorandum to the Court detailing Defendant's increased use of alcohol to manage his stress about the instant offense, the Court recommends that Defendant participate in the Bureau of Prisons 500 hour program.

**DATED**: December 10, 2009.

MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

<u>Attorney for Plaintiff</u>:
Andrea W. Hattan

<u>Attorney for Defendant</u>:
Russell Aboud